UNITED STATES COURT OF INTERNATIONAL TRADE
ONE FEDERAL PLAZA
NEW YORK, NEW YORK 10278-0001

CHAMBERS OF
KARA M. WESTERCAMP
JUDGE

November 9, 2026

**VIA CM/ECF**

Re: Ternium Mexico, S.A. de C.V. v. United States
Court No. 25-00236

Dear Counsel:

Oral argument in this action is scheduled for Wednesday, November 18, 2026, at 10:00am ET in Courtroom 4 of the United States Court of International Trade, One Federal Plaza, New York, New York. In preparation for oral argument, the Court would like counsel to be prepared to address the issues noted below. As the Court continues to review the documents in this case or as the argument progresses, the Court may decide to ask additional questions. The parties may raise additional matters if they wish. Opening statements are not necessary, but parties may make an opening statement of no more than five minutes.

## I. FOR THE PLAINTIFF: TERNIUM MEXICO, S.A. DE C.V.

1. In your Statement of Jurisdiction section of your opening brief, as well as your reply brief, you cite *Bioparques*[1] for the proposition that, in determinations involving free trade countries, special timing rules (i.e., commencing an action within 30 days after the 31st day after publication of the notice of the determination) *supplant* the usual requirements (i.e., the 30-day-after-order timing of § 1516a(a)(2)(A)). *See* Ternium Mexico, S.A. de C.V. Confidential Mot. for J. on Agency R (Apr. 6, 2026) (Ternium Br.) at 3; Ternium Mexico, S.A. de C.V. Confidential Final Reply Br. (Aug. 7, 2026) (Ternium Reply Br.) at 2-4.

   a. Is *Bioparques* dispositive and are there any distinguishing facts there that cut against its applicability here?

   b. What specific textual arguments in the special timing provision of § 1516a(a)(5)(A) support your reading?

[1] *Bioparques De Occidente, S.A. de C.V. v. United States*, 31 F.4th 1336, 1347 (Fed. Cir. 2022).

2. If the Court were to find that Ternium omitted information that Commerce requested (i.e., information in the Loan Template)[2], why should *Timken,*[3] *NTN Bearing Corp,*[4] and *Fischer S.A. Comercio*[5] be applied here?

   a. Explain how a close reading of the language[6] in these cases supports extending those cases to omitted information, as opposed to limiting their applicability to information that was provided but inaccurate.

   b. In *Timken* and *NTN Bearing Corp*, the Respondents attempted to fix their own errors. Does it matter that the error Ternium attempted to fix was Commerce's calculation rather than their own?

3. In *Timken*, the Court held that "Commerce is free to correct any type of importer error…"[7] How do you interpret the phrase "free to" and apply it to the facts at hand if Commerce had the discretion to, or not to, correct any type of importer error?

4. Commerce twice asked Ternium to complete the Loan Template for its Bancomext and NAFIN financial factoring transactions, and Ternium's January 21, 2025, response left the "Life of Loan" column blank. Def.'s Resp. to Pl.'s Rule 56.2 Mot. for J. upon the Agency R. (July 8, 2026) (Def.'s Br.) at 5-6; Def.-Intervenors' Resp. in Opp'n to Pl.'s Rule 56.2 Mot. (July 13, 2026) (Intervenors' Br.) at 12-13; Issues and Decision Memorandum (Aug. 25, 2025) (IDM) at 24.

   a. Why did Ternium leave that column blank, when it was later able to supply the number of days outstanding for every transaction?

   b. Before the *Preliminary Determination*, did Ternium ask Commerce how to report factoring transactions in the provided templates? If so, where is that on the record?

---

[2] Ternium SQR2 at Exhibit Supp2. 10.
[3] *Timken U.S. Corp. v. United States*, 434 F.3d 1345 (Fed. Cir. 2006).
[4] *NTN Bearing Corp. v. United States*, 74 F.3d 1204 (Fed. Cir. 1995).
[5] *Fischer S.A. Comercio v. United States*, 700 F. Supp. 2d 1364 (Ct. Int'l Trade 2010).
[6] In *Timken*, the Court states that the remand of Commerce's results was proper where the Respondent "sought correction of its errors," *Timken U.S. Corp*, 434 F.3d at 1354; in *NTN Bearing Corp*, the Court uses the term "corrective information," *NTN Bearing Corp*, 74 F.3d at 1208; and in *Fischer S.A. Comercio*, the Court found an abuse of discretion because, amongst other factors, Commerce did not consider further pages "to correct information already provided," *Fischer S.A. Comercio,* 700 F. Supp. 2d at 348.
[7] *Timken U.S. Corp*, 434 F.3d at 1353 (The Court used discretionary language "free to" to identify Commerce's obligations rather than mandatory language (i.e. "has to," "must")).

5. Defendant-Intervenors argue that the 180-day period in the Bancomext brochure is the maximum payment term on an invoice, not the period between Bancomext's advance and the customer's payment. Intervenors' Br. at 29 n.6.

   a. How do you respond? Where does the record establish that no factored invoice remained outstanding beyond 180 days?

   b. With the July 1, 2025, submission removed from the record, what record evidence remains regarding the term of the *NAFIN factoring* transactions? *See* Ternium Br. at 16.

6. Ternium describes its proposed correction as adding the number of days outstanding and retitled one column. Ternium Br. at 18-19. Defendant-Intervenors respond that retitling the column changes the meaning of every figure in it. Intervenors' Br. at 23-24. How is a change affecting every observation in two of the variables that drive the benefit calculation "minor" under *Goodluck India Ltd. v. United States*, 11 F.4th 1335, 1343 (Fed. Cir. 2021)?

7. Ternium argues and cites *China Kingdom*[8] for the proposition that information Commerce declined to verify cannot be information that "cannot be verified" under 19 U.S.C. § 1677e(a)(2)(D). Ternium Br. at 27. Commerce also found that "necessary information is missing from the record" under 19 U.S.C. § 1677e(a)(1). IDM at 24. If the Court agrees with Ternium as to the application of subsection (a)(2)(D), how does subsection (a)(1) not independently support Commerce's resort to facts otherwise available?

8. Ternium's reply brief does not respond to Defendant-Intervenors' arguments that *Gallant Ocean (Thailand) Co. v. United States*, 602 F.3d 1319 (Fed. Cir. 2010), predates 19 U.S.C. § 1677e(d), and that § 1677e(d)(3) relieves Commerce of any job of estimating the actual subsidy rate. Intervenors' Br. at 31-32. How do you respond?

   a. Why is a rate calculated for a Bancomext loan program not a rate for a "same or similar program" under § 1677e(d)(1)(A)(i)?

9. If the Court were to remand, what relief does Ternium seek? Should Commerce be directed to accept the rejected templates, to reopen the record, or to recalculate a benefit using information already on the record? Would any of those approaches, on its own, bring Ternium's overall rate below the *de minimis* threshold?

---

[8] *China Kingdom Imp. & Exp. Co. v. United States*, 31 C.I.T. 1329, 1340, 507 F. Supp. 2d 1337, 1349 n.7 (2007).

## II. FOR THE DEFENDANT: UNITED STATES

1. The Government argues that the length of time the amended templates were on the record before Commerce rejected them "is not relevant." Def.'s Br. at 24-25. How is that position consistent with *Papierfabrik*[9], which Ternium cites? *See* Ternium Reply Br. at 13.

2. Does it matter that the information regarding the loan terms was provided in a separate, unrequested document (i.e., the Bancomext brochure) rather than in the requested Loan Template? Is the Government valuing form over function with the submittal of information?

3. At the preliminary stage, Commerce filled the gap in the Bancomext data without drawing an adverse inference. *See* Intervenors' Br. at 14. At the final stage, Commerce found that Ternium's proposed corrections "indicated to Commerce that the record information . . . was unreliable." IDM at 25. Does this mean that Ternium's *attempt* to correct its reporting itself is a basis for the adverse inference? If so, how is that consistent with the "best of its ability" standard? *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003)

4. The Government writes that a case brief must include "arguments supporting Commerce's preliminary findings." Def.'s Br. at 34-35. On the other hand, 19 C.F.R. § 351.309(c)(2) calls for the inclusion of all "relevant" arguments.

   a. How do those two prescriptions relate to one another?

   b. How is that position consistent with the "full and fair opportunity to raise {an} issue" principle of exhaustion. *Qingdao Taifa Group Co. v. United States*, 637 F. Supp. 2d 1231, 1236 (Ct. Int'l Trade 2009)?

## III. FOR THE DEFENDANT-INTERVENORS

1. In *Galvasid*[10], this Court rejected the same argument, made by the same defendant-intervenors, in the companion antidumping duty case. Ternium Reply Br. at 3-4. The Court there marshaled both the plain text of the statute and *Bioparques* to find jurisdiction. *Galvasid,* Slip Op. 26-80 at 7-10.

   a. Is there any reason to distinguish this countervailing duty action from *Galvasid*?

   b. Section 1516a(a)(5)(A) provides that the time limits for an action involving a free trade area country "shall not begin to run" until the 31st day after

---

[9] *Papierfabrik August Koehler SE v. United States*, 843 F.3d 1373, 1384 (Fed. Cir. 2016).
[10] *Galvasid S.A. de C.V. v. United States*, Slip Op. 26-80, Court No. 25-00235 (Ct. Int'l Trade July 24, 2026)

publication of the determination. Under your reading, what independent work would those words do if not interpreted as Ternium would have it?

2. You state that the administrative record contains "no data concerning the duration" of any of Ternium's factoring transactions. Intervenors' Br. at 10. In what way does Exhibit Supp2. 10 contain invoice dates and payment dates from which Commerce could have computed the number of days outstanding for any observation? *See* Ternium's Reply Br. at 9.

3. You argue that accepting Ternium's rebuttal arguments would have deprived administrative petitioners of a "full and fair opportunity" to contest them. Intervenors' Br. at 36. Petitioners were the first to raise the offset issue in their case brief. What prejudice would the administrative petitioners have suffered had Commerce accepted rebuttal arguments limited to how that calculation should be revised?

Although some of these questions are directed to specific parties, any party may address the questions above. Please contact my case manager, Mr. Ryan O'Neil-Berven, at (212) 264-1615 or ryan_oneilberven@cit.uscourts.gov, with any questions or concerns. Thank you for your assistance and cooperation.

Very truly yours,
/s/ *Kara M. Westercamp*
Kara M. Westercamp, Judge

Cc: Ryan O'Neil-Berven
For docketing